UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 3:15-CR-146 |
| ) | |
| JOSHUA MICHAEL SIZEMORE ) | |

### MEMORANDUM AND ORDER

On October 4, 2014, defendant Joshua Michael Sizemore was driving while intoxicated in the Great Smoky Mountains National Park. The defendant crashed his car, killing one of his passengers, Ashley Marie Trent, and seriously injuring himself and passengers Sherice Mathes and Brent Clapper. On November 23, 2015, defendant pled guilty to an information charging him with one count of involuntary manslaughter in violation of 18 U.S.C. §§ 1112, 7(3) [Docs. 1, 10].

A presentence investigation report was prepared and calculated defendant's total offense level of 19 and criminal history category of I, which results in an advisory Guidelines range of 30—37 months. Neither the government nor the defendant objected to the Guidelines range. After hearing from the parties at the sentencing hearing on May 4, 2016, and after considering all of the factors set forth in 18 U.S.C. § 3553(a), the Court determined that a term of imprisonment of 36 months, followed by a 3-year term of supervised release was sufficient, but not greater than necessary, to comply with the purposes of sentencing. As part of the defendant's sentencing, the Court took the issue of

restitution under advisement. This order will resolve that issue and the government's motion for a restitution order [Doc. 18].

The plea agreement signed by the defendant contains the following provision regarding restitution:

> The defendant agrees that the Court shall order restitution, pursuant to any applicable provision of law, for any loss caused to: (1) the victims of any offense charged in this case (including dismissed counts); and (2) the victims of any criminal activity that was part of the same course of conduct or common scheme or plan as the defendant's *charged* offenses.

[Doc. 2 at ¶ 8 (emphasis in original)]. In an addendum to the plea agreement [Doc. 27], the parties agreed that restitution in the amount of $173,451.43 payable to A.H., minor daughter of Ashley Trent, was appropriate. The revised Presentence Investigation Report ("PSR") contains the following information regarding restitution:

> Pursuant to 18 U.S.C. § 3663, restitution in the total amount of $230,839.37 may be ordered in this case as set forth below:
>
> > Funeral Expenses of Ashley Marie Trent to Paul Mahan - $9,000.00[1]
> > Blue Cross Blue Shield Insurance as to Brent Clapper - $29,808.27
> > Brent Clapper - $3,990.74
> > Blue Cross Blue Shield Insurance as to Sherice Mathes - $11,787.76
> > Farm Bureau Insurance as to Sherice Mathes - $2,801.17
> > A.H., minor child of Ashley Trent - $173,451.43

[Doc. 26 at ¶ 71]. The government has moved for an order of restitution [Doc. 18] asking the Court to order restitution to each of the victims and the amounts identified in the revised PSR. The defendant filed objections to paragraphs 53 and 71 of the PSR [Doc. 16]. At the defendant's sentencing hearing, defense counsel stated that her only

---

[1] The parties agree and the record reflects that the funeral expenses for Ms. Trent totaled $9,613.55. However, because the expenses were paid in cash, the funeral home gave a discount and the total cost was $9,000.00 [Doc. 16-3].

2

Case 3:15-cr-00146-TWP-CCS   Document 35   Filed 05/06/16   Page 2 of 15   PageID #: 501

remaining objections were to the restitution suggested as to funeral expenses, to Mr. Clapper, and to Ms. Mathes.

As noted above, the defendant has agreed to restitution in the amount of $173,451.43 payable to A.H., minor child of Ashley Trent [Doc. 19 at p. 1; Doc. 27]. The defendant argues that the Court should consider his financial resources when deciding whether to order additional restitution [Doc. 16 at pp. 11—14; Doc. 19 at pp. 2—3]. The defendant also argues that Mr. and Mrs. Mahan, who paid the funeral expenses for Ashley Trent, really don't want restitution and that ordering restitution to them will dilute the amount the defendant can pay toward the restitution owed to A.H. [Doc. 19 at pp. 3—4]. Similarly, defendant does not object to restitution in the amount of $3,990.74 to Mr. Clapper and $2,801.17 to Ms. Mathes, but argues that restitution to these two individuals should be credited against the amounts each received from his insurance company and from Blue Cross Blue Shield [Doc. 16 at pp. 13—14; Doc. 19 at pp. 3—4]. Defense counsel suggests that Farm Bureau, defendant's insurance company, assumed the risk of loss by insuring Mr. Sizemore and that logic dictates that any reimbursement to the insurance company would require the Court to order reimbursement as to all amounts paid by Farm Bureau. As to the amounts paid by Blue Cross Blue Shield, defendant suggests that the Court should consider that A.H. is the victim most in need of restitution. In short, defendant requests that restitution only be ordered as to A.H.

At the sentencing hearing, the government presented a copy of the November 10, 2014 order of the Juvenile Court of Hancock County at Sneedville, Tennessee, awarding temporary legal custody of A.H. to Tammy Annette Trent, the decedent's sister [Doc. 33,

3

Gvmt. Ex. 1]. Upon questioning from the Court, Ms. Tammy Trent testified that she understood that any restitution awarded would be solely for the use and benefit of A.H. The government further represented that the insurance money paid for the benefit of A.H. consists of $10,000 in a certificate of deposit and $8,450 in a savings account. Ms. Tammy Trent has been advised by A.H.'s guardian ad litem that the money is solely for the benefit of A.H. and that she can withdraw up to $1,000 per year for A.H. The government also advised that Ms. Tammy Trent is the representative for A.H. for purposes of any survivor benefits from the Social Security Administration and that Ms. Trent has made the required financial reports pursuant to that obligation.

According to the government, Mr. and Mrs. Mahan have indicated they intend to accept the restitution for Ashley Trent's funeral expenses and use it for A.H.'s benefit[2] [Doc. 18 at p. 7]. The government also argued that whether or not the Mahans want the restitution is not an appropriate factor for consideration under 18 U.S.C. § 3663. The government argued that the defendant has not carried his burden to show that the money paid by Farm Bureau to Mr. Clapper and Ms. Mathes was solely for medical expenses. In support of this argument, the government relies on an email exchange with the defendant's civil attorney, David M. Tilson, in which he agrees that the settlement was "a general settlement of their claims" [Doc. 33, Gvmt. Ex. 2]. The government notes that both Ms. Mathes and Mr. Clapper are also victims and they deserve restitution. The

---

[2] At the sentencing hearing, defense counsel suggested that the Mahans have no means to get any restitution amounts to A.H.

4

government, relying on Sixth Circuit caselaw [Doc. 17 at p. 4], contends that restitution is a part of the defendant's punishment for his actions.

In response, the defendant notes that the insurance money paid to Mr. Clapper was paid to him and to his attorney. The insurance money paid to Ms. Mathes was paid in part to her and in part to the University of Tennessee hospital for her medical treatment. The defendant notes the significant amount of debt he owes for his own medical treatment and that his income in 2014 and 2015 was diminished due to the time he was recuperating from his own injuries. The defendant anticipates that he will have greater opportunity to work and earn income when he is released from incarceration, but suggests that money should go to A.H.

I. Whether Restitution is Appropriate

The parties have agreed, and the Court concurs, that the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, governs the issue of restitution in this case. *See United States v. Portela*, 469 F.3d 496, 499 (6th Cir. 2006) (crime requiring only recklessness does not qualify as a "crime of violence" under 18 U.S.C. § 16(b)). The VWPA is interwoven with the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A. The MVRA made restitution mandatory for certain crimes not applicable to the instant case, but restitution is still discretionary as to crimes covered by the VWPA. *United States v. Day*, 418 F.3d 746, 752—53 (7th Cir. 2005). The MVRA also modified 18 U.S.C. § 3664, which sets forth the procedure for issuing and enforcing restitution orders under both the VWPA and the MVRA. *Id*. at 753.

5

Section 3663(a)(1)(A) provides that the court "may order … that the defendant make restitution to any victim of such offense, or if the victim is deceased, to the victim's estate. The court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense." 18 U.S.C. § 3663(a)(1)(A). Thus, the Court must first determine *whether* to order restitution and, in making such determination, "shall consider – (I) the amount of the loss sustained by each victim as a result of the offense; and (II) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3663(a)(1)(B)(i). *See United States v. Sosabee*, 419 F.3d 451, 460 (6th Cir. 2005) (§ 3663 requires a judge to consider the defendant's financial situation only when determining if restitution should be ordered, not the amount); *Day*, 418 F.3d at 754 ("the court's first determination is *whether* there is to be an award of restitution") (quoting *United States v. Cummings*, 189 F. Supp.2d 67, 72 (S.D.N.Y. 2002).

In accordance with § 3663(a)(1)(A)(I), the Court observes that the total amount of restitution sought is $230,839.37 as set forth above and this sum reflects the losses sustained by the victims as a direct result of the conduct to which the defendant pled guilty. This sum includes funeral expenses for Ms. Trent, Ms. Trent's lost income payable to her minor child, and the medical expenses of Mr. Clapper and Ms. Mathes. The VWPA allows restitution to compensate a victim for medical expenses (§ 3663(b)(2)(A)), funeral expenses (§ 3663(b)(3)), and lost income (§ 3663(b)(2)(C)). Thus, the types of restitution sought are specifically permitted by the statute. Notably,

6

the defendant has not objected to the types or amounts of restitution sought.[3] These facts weigh in favor of an order of restitution.

As set forth in the PSR paragraphs 47—53 [Doc. 26], the defendant has a high school diploma and a technical school diploma in auto body repair. The defendant has worked consistently since 2010 in automobile painting and repair work. He has been employed in his current position since November 11, 2013. His net monthly income is $2,324.00. Pursuant to the information submitted by defendant, his average annual income for the years 2012-2015 was $21,415.92 [Doc. 31-1]. Defendant has noted that he owes $98,295.91 on his own medical bills as a result of this accident and he currently pays approximately $365.00 per month on that obligation [PSR ¶ 53]. Thus, he argues that he will not realistically be able to pay much in restitution and his payments to A.H. should not be "diluted" by obligations to others who do not need or want restitution [Doc. 19 at p. 4]. While an order of restitution will undoubtedly put further strain on the defendant's finances, the Court does not find that such a strain is so significant as to preclude an order of restitution. The defendant has technical skills and a commendable work history which suggest that he will be able to find and maintain employment after his period of incarceration. Further, the defendant's employment history suggests that his income will increase over time based on his experience and performance. Thus, on balance, the Court finds that the defendant has the earning capacity for long-term

---

[3] Disputes as to the proper amount or type of restitution shall be resolved by a preponderance of the evidence. 18 U.S.C. § 3664(e). The government bears the burden of demonstrating the amount of loss sustained by a victim. *Id*. The defendant bears the burden of demonstrating his financial resources. *Id*

7

satisfaction of an amount of restitution. In accordance with § 3663(a)(1)(B)(i), the Court finds that an order of restitution is appropriate in this case.

In addition, the Court notes that the defendant has specifically agreed, pursuant to his plea agreement, to pay restitution to "(1) the victims of any offense charged in this case (including dismissed counts); and (2) the victims of any criminal activity that was part of the same course of conduct or common scheme or plan as the defendant's *charged* offenses" [Doc. 2 at ¶ 8]. It is undisputed that A.H., Ms. Mathes, and Mr. Clapper are victims of the same course of conduct as the defendant's charged offense. The defendant has further agreed to the amount of restitution to be paid to A.H., Ms. Trent's minor daughter, and that restitution is appropriate to both Mr. Clapper and Ms. Mathes [Doc. 16 at p. 13; Doc. 27]. The VWPA specifies that the Court may order restitution "the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3). Accordingly, in light of the defendant's clear agreement, the Court finds that an order of restitution is appropriate pursuant to § 3663(a)(3).

II. The Amount of Restitution

Once the court determines that restitution is appropriate, the court "*shall* order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A) (emphasis added); *Day*, 418 F.3d at 755 ("[a] district court must order full restitution in an amount equal to the victim's loss without reference to the defendant's financial circumstances"). "In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or

8

any other source be considered in determining the amount of restitution." 18 U.S.C. § 3664(f)(1)(B). As explained in *United States v. Bright*, 353 F.3d 1114, 1121 (9th Cir. 2004), "§ 3664 directs the court to order restitution of the full amount of a victim's loss without regard to the defendant's economic circumstances and – echoing VWPA § 3663 – *without regard to other sources of compensation for the victims*. Any such offsets are instead to be handled separately as potential credits against the defendant's restitution obligation – not as reductions in the amount of that obligation in the first instance." Pursuant to § 3664(f)(2), the defendant's economic circumstances factor only in fashioning the manner of and schedule for paying restitution. *Id*. at 1122; *see United States v. Crawford*, 169 F.3d 590, 592 n.1 (9th Cir. 1999) (section 3664(f)(1)(A) precludes the court from considering a defendant's economic circumstances when setting the amount of the restitution, but the court may take such circumstances into account when setting the method and schedule by which restitution is to be paid) (citing § 3664(f)(2)& (3)). Thus, based on the plain language of the statute, the Court is required to order restitution in the full amounts as set forth above without consideration of the defendant's economic circumstances or the amounts that the victims have received or may receive from other sources. The Court finds that restitution totaling $230,839.37 is appropriate in this case.

### III. Offsets to the Restitution Amount

Defendant contends that because his insurance provider paid $12,500 each to Mr. Clapper and Ms. Mathes, he is entitled to an offset in that amount against their restitution [Doc. 16 at p. 13]. The government opposes any offset [Doc. 17 at pp. 6—7]. The record

9

reflects that Mr. Sizemore's insurance provider, Farm Bureau Insurance, paid $12,500 to Ms. Mathes via two checks: one in the amount of $2,801.17 payable to Sherice Mathes and UT Medical Center and one payable to Ms. Mathes for $9,698.83 [Doc. 16-4]. The record also reflects that Farm Bureau paid $12,500 to Mr. Clapper via one check payable to him and to his attorney, David W. Webb [*Id.*]. Mr. David M. Tilson, attorney for the insurance company, has advised counsel for the government that the settlement "was a general settlement of their claims" [Doc. 17-3].

"Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in … any State civil proceeding … ." 18 U.S.C. § 3664(j)(2)(B). Thus, "any offsets stemming from a victim's compensation from other sources are 'to be handled separately as potential credits against the defendant's restitution obligation – not as reductions in the amount of that obligation in the first instance.'" *United States v. Elson*, 577 F.3d 713, 733 (6th Cir. 2009) (quoting *Bright*, 353 F.3d at 1121). The burden of proving an offset lies with the defendant. *Elson*, 577 F.3d at 734. "While insurance settlements are excluded in the initial computation of the amount of restitution owed, once that total amount is determined, the defendant is entitled to have the amount of restitution reduced by any amount later recovered by the victim as compensatory damages for the same loss." *Crawford*, 169 F.3d at 593. "An offset, therefore, is applicable only when there is compensation for the 'same loss.'" *Id.*

The flaw in defendant's argument, as the Court sees it, is the statutory language referring to amounts "*later* recovered as compensatory damages." 18 U.S.C. § 3664(j)(2)

10

(emphasis added). Ms. Mathes and Mr. Clapper have already received the insurance payments; thus, they cannot be amounts "later recovered." *See United States v. Alalade*, 204 F.3d 536, 540 n.4 (4th Cir.), *cert. denied*, 530 U.S. 1269 (2000) ("§3664(j)(2), by its terms, only comes into play after the district court has already ordered restitution in the full amount of the victim's loss"); *Bright*, 353 F.3d at 1122; *United States v. Smith*, 297 F. Supp. 2d 69, 73 (D.D.C. 2003). While this result may seem like splitting hairs, the Court is not at liberty to ignore language from the statute that Congress has approved. Similarly, amounts paid to medical providers on behalf of the victims are not eligible to be offset against the total amount of restitution. Although Ms. Mathes and Mr. Clapper have surely benefitted from having these medical bills paid by Blue Cross Blue Shield, those amounts are not funds that they have received. *See Bright*, 353 F.3d at 1123 ("funds the victims have *not* received cannot reduce or offset the amount of losses the defendant is required to repay"). Accordingly, the Court finds that the defendant is not entitled to an offset for any of the amounts of restitution.

  IV. <u>Schedule of Payments</u>

Now that the Court has determined that restitution is appropriate and the total amount of restitution, the Court must determine an appropriate schedule for payment of the restitution amount. *See Day*, 418 F.3d at 761 ("the most direct, and most efficient, way for a district court to perform its statutory duty is to fix a payment schedule and to set forth that schedule at the time of sentencing, even if later events might require its amendment"). According to § 3664(f)(2), the Court shall "specify in the restitution order the manner in which and the schedule according to which, the restitution is to be paid, in

11

consideration of – (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligations to dependents." 18 U.S.C. § 3664(f)(2); *Day*, 418 F.3d at 758 ("the district court is required to consider the financial resources of the defendant with respect to the method and schedule of payments"); *Bright*, 353 F.3d at 1122 ("[t]he defendant's economic circumstances factor in only in fashioning the manner of and schedule for paying restitution"). Moreover, the Court is required to set forth the order in which victims are to be compensated. "If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation." 18 U.S.C. § 3664(j)(1). The Court interprets this provision as directing that restitution first be made to the individual victims and then to the insurance providers.

As set forth above, defendant currently has a monthly income of approximately $2,324.00. His reported monthly expenses total $1,374.00, including payments of approximately $365.00 per month toward his own outstanding medical bills arising from this accident [Doc. 26 at ¶ 53]. Thus, defendant currently has approximately $950.00 per month which may be used for restitution. The Court presumes that such amounts will not be available to the defendant during his term of incarceration, but that he could make minimal payments during his term of incarceration. Based on his work history and his

level of skill at automobile repair and painting, the Court further presumes that the defendant could earn comparable and subsequently increasing income following his release from incarceration. Thus, considering the defendant's current financial resources, his projected earnings, and his financial obligations, the Court finds that the defendant has and will have an earning capacity for long-term satisfaction of the restitution amount. The Court further finds, however, that the defendant does not have the ability to pay interest on the restitution ordered and interest will be waived.

For all of the reasons set forth above, the government's motion for a restitution order [Doc. 18] is **GRANTED** and the defendant's objections to Paragraph 71 of the PSR [Docs. 16, 19] are **OVERRULED**. The Presentence Investigation Report is accepted without revision. The Court orders the defendant to pay restitution totaling $230,839.37 in the following amounts and in the following order:

(1) $173,451.43 payable to Tammy Annette Trent for the use and benefit of A.H., minor child of Ashley Trent, until January 19, 2027, after which time any remaining payments shall be made to A.H.

(2) $9,000.00 payable to Paul and Betty Mahon for the funeral expenses of Ashley Trent

(3) $3,990.74 payable to Brent Clapper

(4) $2,801.17 payable to Farm Bureau Insurance as to Sherice Mathes

(5) $29,808.27 payable to Blue Cross Blue Shield Insurance as to Brent Clapper

(6) $11,787.76 payable to Blue Cross Blue Shield Insurance as to Sherice Mathes

13

The government may enforce the full amount of restitution ordered at any time, pursuant to 18 U.S.C. §§ 3612, 3613, and 3664(m).

While incarcerated, the defendant must pay, through the Bureau of Prisons Inmate Financial Responsibility Program, $25.00 per quarter, or no less than 50% of the funds available to the defendant per quarter, whichever sum is greater. If, after considering the defendant's specific obligations and resources, the Unit Manager determines that more or less should be due, the Bureau of Prisons may require the defendant to pay at least such amount, with notice to the defendant, the United States Attorney, and the Court, subject to *de novo* review by this Court. Any portion of the restitution that is not paid in full at the time of defendant's release from imprisonment shall become a condition of supervision. The United States Bureau of Prisons, the United States Probation Office, and the United States Attorney's Office shall monitor the payment of restitution, and reassess and report to the Court any change in the defendant's ability to pay restitution.

Following his release from incarceration, the defendant shall pay at least 10% of his gross monthly income, starting sixty (60) days after release from the Bureau of Prisons. If, after considering the defendant's economic circumstances and responsibilities, the United States Probation Officer determines that more or less should be due on a monthly basis, the United States Probation Officer may require the defendant to pay at least such amount, with notice to the defendant, the United States Attorney, and the Court, subject to *de novo* review by this Court. Finally, not later than thirty (30) days after any change occurs, the defendant shall notify the United States Probation Officer, the United States Attorney, and this Court of any material change in economic

circumstances that might affect the defendant's ability to pay restitution, and any change in mailing or residence address.

The Clerk shall prepare a judgment incorporating the restitution provisions set forth in this order. The Clerk shall also provide a copy of this Memorandum and Order to the United States Bureau of Prisons and to the United States Probation Office for forwarding to the United States Sentencing Commission.

IT IS SO ORDERED.

s/ Thomas W. Phillips<br>
SENIOR UNITED STATES DISTRICT JUDGE